Dunbar-Du-Kate Co. *v.* Harper.*

(Division A.   Nov. 23, 1925.)

[105 So. p.   No. 25183.]

1. Bridges. *Responsibility for one's injury held referable to his negligence in attempting to turn wagon in too limited space.*

   Responsibility for injury to one on bridge *held* referable to his negligence in attempting to turn his wagon in a space so limited as to render it practically impossible for him to do it safely.

2. BRIDGES. *No duty to maintain railing capable of withstanding extraordinary strain from negligent attempt to turn wagon in too limited space.*

    Any duty to maintain suitable railing along side of bridge *held* not to require such a railing as would withstand extraordinary strain placed on it by negligent attempt to turn around a wagon on the bridge in too limited space.

    *Headnotes 1. Bridges, 9 C. J., Section 84 (Anno); 2. Bridges, 9 C. J., Section 79 (Anno).

APPEAL from circuit court of Harrison county.

HON. D. M. GRAHAM, Judge.

Action by W. T. Harper against the Dunbar-Du-Kate Company. Judgment for plaintiff, and defendant appeals. Reversed and judgment rendered.

*White & Ford,* for appellant.

We respectfully submit that appellee has no case, and, furthermore, his proof is at war with the allegations of the bill of complaint. What duty was owed appellee by the appellant: none on the facts of this case, but let us assume that he was a licensee—certainly not an invitee—then what situation arises? Appellee started to drive on the wharf; he had done so often; he knew its width; he did not take the trouble to see if other teams were coming toward him. The wharf was three hundred feet long, and he drove on, and met the other teams which were in one hundred feet of the shore from which appellee started. Clearly the other two teams were in the right. The bridge was not intended for or made for teams to pass. Appellant was under no obligation to so construct it. Now, up to this time, no one by the wildest stretch of the imagination and resolving all things against the corporation could say appellant had violated any duty, or been guilty of negligence toward appellee. Does appellant then do anything to appellee's damage? Certainly not. But appellee tries to turn his wagon around.

His mule becomes unruly and backs off the bridge, breaking the railing. Appellant was under no duty to furnish a bridge for appellee to turn on, and certainly appellant cannot be held responsible for the actions of a mule. We must not lose sight of the fact that appellee was *turning* on this bridge.

We owed him no duty to have a railing of any sort on the bridge, so how could he be held liable for failure to furnish a particular kind of railing? Of course, the real facts are that there was no defect in the railing, but appellee assumes that because appellant has since replaced the railing that *appellee broke,* that there is a case here.

We ask the court not to get away from the *cause* of this accident. There is no room for the contributory negligence statute. There were no concurring causes. An act of appellee or the appellant, or the mule caused the accident. If we go to talking about contributory negligence what are we to do about the mule? The whole case is that appellee tried to turn around; and the mule, seeing it could not be done; objected; became excited; and backed off the wharff.

We respectfully submit there must be a negligent violation of a duty before a cause of action arises.

*O. J. Dedeaux,* for appellee.

Attorney for the appellant attempts to create the impression that this was a private bridge, that the public had no right on this bridge, and that it was constructed of such a character that vehicles, automobiles, and wagons had a particular part upon which they could go on the bridge, and that there was a part on edges for pedestrians. There is no testimony in the record to show such a fact. The testimony reveals that the bridge was just an ordinary bridge, approximately fourteen feet wide with a run way in the middle for the wheels of vehicles.

This bridge was being used for the public and it was the only way by which the public could go to the factory to buy their ice, to buy shells, and to buy other products manufactured by the defendant's company. Certainly, the appellant could not claim that the appellee had no right to go on the bridge when the testimony is undisputed that the appellee was going to the factory to buy the ice manufactured and sold by the appellant. This being true, the appellee had a right and, in fact, was invited by the appellant to use the bridge in order to be able to dispose of their products.

The plaintiff claims, therefore, that it was the duty of the defendant to have reasonably safe rail guards on the bridge and that when, as the testimony shows, this, the original rail guard, had rotted off and was replaced by a small strip seven-eighths of an inch thick by three inches wide, certainly he was derelict in his duty towards the public and towards Mr. Harper, the plaintiff. 5 Thompson on Negligence, page 541; *Kennedy* v. *New York,* 73 N. Y. 365, 9 C. J., page 477, 20 L. R. A. pages 681-682.

SMITH, C. J., delivered the opinion of the court.

The responsibility for the appellee's injury must be referred to his own negligence in attempting to turn his wagon around on a bridge, the space therefor being so limited as to render it practically impossible for him to do so with safety.

Conceding that the appellant was charged with the duty of maintaining a suitable railing along the side of the bridge, it was not required to maintain such a railing as would withstand the extraordinary strain placed on it by the appellee's negligence. The peremptory instruction requested by the appellant should have been granted.

*Reversed, and judgment here for appellant.*